IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

NICKOLAS G. SPANOS,
                    Plaintiff,

v.                                                                      Civil Action No. 3:21cv638

HOWARD C. VICK, JR.,
                    Defendant.

## OPINION

Pro se plaintiff Nickolas G. Spanos sues Howard C. Vick, Jr., for violating the Virginia Code of Professional Conduct ("the VCPC").[1]  Spanos seeks the revocation of Vick's license to practice law in Virginia and other "discipline . . . consistent with the laws" of Virginia.  (ECF No. 1-1, at 38.)  Vick moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a cognizable claim.

Assuming the truth of the factual allegations in the complaint and drawing all inferences in favor of Spanos, the Court concludes that Spanos does not have standing to prosecute Vick's alleged state ethical violations.  But even if Spanos does have standing, the Court also finds that the Court has neither federal question nor diversity jurisdiction over the case.  And the Court declines to exercise any supplemental jurisdiction it has over the case.  Accordingly, the Court will remand the case to the Henrico County Circuit Court pursuant to 28 U.S.C. § 1447(c).

## I. BACKGROUND

On December 3, 1998, and April 15, 1999, a multijurisdictional grand jury issued thirteen indictments charging Spanos for his alleged participation in a broad cocaine distribution

---

[1] The parties refer interchangeably to the VCPC and the Virginia Rules of Professional Responsibility.  For clarity, the Court adopts the acronym employed by Spanos: VCPC.

conspiracy. (ECF No. 1-1, at 3.) On or around November 28, 1998, Spanos fled to Athens, Greece. (*Id.* at 4.) Spanos did not return, and according to Spanos, Vick is to blame. Spanos asserts that Vick told him to "leave for Greece and never come back." (*Id.*) He claims that Vick later refused to request a Red Notice[2] from Interpol for Spanos's arrest and that Vick made slanderous statements to the media in an attempt to "frighten" Spanos and dissuade him from "turning himself into law enforcement authorities." (ECF No. 1-1, at 6.) Further, he claims that Vick conspired with, among others, various McGuireWoods partners, the Honorable Lee A. Harris, the Federal Bureau of Investigation, and several Henrico County commonwealth's attorneys to "unethically remove" Spanos as trustee and executor of his late father's trust and obstruct justice in various ways related to Spanos's indictments. (*Id.* at 6–10.)

Seeking redress for Vick's alleged misdoings, Spanos filed an "ethics complaint" in the Henrico County Circuit Court. (*Id.* at 2–3.) In the complaint, Spanos appears to raise several claims, including violations of both federal and Virginia criminal code provisions,[3] violations of Spanos's "constitutional and civil rights,"[4] and violations of the VCPC. (ECF No. 1-1, at 9, 22,

---

[2] "A Red Notice is a request to law enforcement worldwide to locate and provisionally arrest a person pending extradition, surrender, or similar legal action." *Red Notices*, Interpol, https://www.interpol.int/en/How-we-work/Notices/Red-Notices (last visited Dec. 20, 2021).

[3] Under "Count One," titled "Violations of the Code of Virginia and U.S. Codes by the Defendant," Spanos cites the following: Va. Code. Ann. § 18.2-439 (acceptance of bribe by officer or candidate); § 18.2-447 (bribery); § 18.2-460 (obstructing justice); 18 U.S.C. § 1001 (false statements); and § 1071 (concealing person from arrest). (*Id.* at 19–22.)
In his response to Vick's motion to dismiss, Spanos states that the "[p]laintiff has not sued for alleged violations of Virginia criminal law. Plaintiff's ethical complaint alleges only that federal and state criminal acts violate[] the Rules of the VCPC." (ECF No. 9, at 12; *see also id.* at 15 ("The statute of limitations for alleged violations of the U.S. Code . . . do not apply in [p]laintiff's case . . . [p]laintiff is not requesting any relief under those statutes.").)

[4] Under "Count Two," titled "Violations of Plaintiff's Constitutional and Civil Rights by the Defendant," Spanos states that Vick violated his rights in various ways including by conspiring with McGuireWoods partners to remove Spanos as the trustee of his late father's trust, by "not

32.)  As relief, he asked the court "to revoke [Vick's] license . . . or discipline [Vick] consistent with the laws of the Commonwealth of Virginia."  (*Id.* at 39.)  Vick removed the case to federal court pursuant to 28 U.S.C. § 1441(a), citing Spanos's mention of federal laws as supporting the Court's original jurisdiction under 28 U.S.C. § 1331.  (ECF No. 1.)  Vick then moved to dismiss Spanos's complaint.  (ECF No. 4.)

In response to Vick's motion, Spanos disavowed not only any federal claim but also any request for personal relief.  "In this plaintiff's legal ethics case, the express intent of the [p]laintiff is for the Court to discipline the [d]efendant Vick for alleged violations of the [VCPC]."  (ECF No. 9, at 10.)  The "[p]laintiff's case before this Court is **not a private right of action**[, and] it is a valid ethics complaint only."[5]  (sic) (*Id.* at 14 (emphasis added).)

Spanos says that Virginia Code § 54.1-3915 allows him to file an "ethics complaint" in Virginia court because the statute prohibits the Virginia Supreme Court from creating "any rule or regulation or method of procedure which eliminates the jurisdiction of the courts to deal with the discipline of attorneys."[6]  *Id.*  He concludes, therefore, that the "Virginia State Bar has no

---

filing an extradition request to Greece," and by "obstructing justice."  (ECF No 1-1, at 23–32.) Spanos also includes the text of 18 U.S.C. § 242.  (*Id.* at 31.)

In his response to Vick's motion to dismiss, Spanos states that "[t]he [p]laintiff has only included in Counts I., II., [and] III., of his ethics complaint that Defendant Vick allegedly committed criminal acts that violate the Rules of the [VCPC]."  (ECF No. 9, at 12.  *But see id.* at 45 (stating Vick violated Spanos's "Fifth Amendment right to due process" and his "Sixth Amendment right to a speedy trial" when he refused to file an affidavit for extradition.).)

[5] *See also id.* at 55 ("Plaintiff prays that the Court issues an order dismissing the [d]efendant's Motion to Dismiss [p]laintiff's Ethics Complaint because (1) *[p]laintiff's Ethics Complaint is only an Ethics Complaint . . . .*") (emphasis added)).

[6] Virginia Code § 54.1-3915 reads in pertinent part: "Notwithstanding the foregoing provisions of this article, the Supreme Court shall not promulgate rules or regulations prescribing a code of ethics governing the professional conduct of attorneys which are inconsistent with any statute; nor shall it promulgate rule or regulation or method of procedure which eliminates the jurisdiction of the courts to deal with the discipline of attorneys."

jurisdiction under any Virginia Statute to impose discipline on attorneys practicing law in Virginia or to suspend or revoke any attorney's license." (ECF No. 9, at 3.) As discussed below, this conclusion is plainly wrong.

Vick argues that the Court should exercise supplemental jurisdiction and dismiss Spanos's "ethics complaint" because the VCPC does not create a private right of action. (ECF No. 12, at 2.) Further, he asserts that Spanos "has not stated grounds to conclude that [Vick] . . . committed an ethical transgression." (ECF No. 5, at 18.) Finally, he states that this Court cannot grant Spanos the relief he seeks. (*Id.*)

## II. DISCUSSION

### *A. Pro Se Litigants*

Federal Rule of Civil Procedure 8(a)(2) states that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Courts do not expect that pro se plaintiffs–such as Spanos–will frame legal issues with the same clarity and precision as attorneys. Accordingly, courts construe pro se complaints generously. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

This principle of liberal construction is not without limits, however, and appearing pro se does not relieve plaintiffs of the obligation to comply with the Federal Rules of Civil Procedure. Courts need not discern the unexpressed intent of pro se plaintiffs or take on the "improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Id.* Courts do not have to "discern [the plaintiff's] unexpressed intent," "construct a plaintiff's legal arguments," or "conjure up and decide issues never fairly presented" in the complaint. *Norman v. Wells Fargo Bank, N.A.*, No. 3:17cv585, 2018 U.S. Dist. LEXIS 29818, *4 (E.D. Va. Feb. 23, 2018) (cleaned up).

4

### B. Removal

"The right to remove a case from state to federal court derives solely from 28 U.S.C. § 1441." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). Under § 1441(a), "any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." The party seeking removal bears the burden of establishing federal jurisdiction. *Id.*; *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016).

Section 1447(c) of Title 28 of the U.S. Code requires that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction [over a case removed from state court], the case shall be remanded." "In the case where remand is based on a lack of subject matter jurisdiction, the remand order may be entered at any time, for jurisdiction goes to the very power of the court to act." *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 196 (4th Cir. 2008).

### C. Federal Subject Matter Jurisdiction

#### i. Standing

Under Article III of the Constitution, federal courts may consider only "[c]ases" and "[c]ontroversies." U.S. Const. art. III, § 2. "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (2006)). "Thus, Article III standing is a 'subject matter jurisdiction issue.'" *Mejico v. Alba Web Designs, LLC*, 515 F. Supp. 3d 424, 430 (W.D. Va. 2021) (quoting *Beyond Sys., Inc., v. Kraft Foods, Inc.*, 777 F.3d 712, 715 (4th Cir. 2015)).

"To establish an injury sufficient to confer standing to bring suit under Article III, a plaintiff must plausibly allege: (1) 'an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Buscemi v. Bell*, 964 F.3d 252, 258 (4th Cir. 2020) (quoting *Spokeo,* 578 U.S. at 338). "These requirements for standing ensure that the plaintiff has 'a personal stake in the outcome of the controversy.'" *Id.* (quoting *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018)). Here, the Court need look no further than the third requirement for Article III standing, redressability.

"Because redressability is an 'irreducible' component of standing, no federal court has jurisdiction to enter a judgment unless it provides a remedy that can redress the plaintiff's injury." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021) (quoting *Spokeo*, 578 U.S. at 338). Spanos requests very specific relief: he asks the court "to revoke [Vick's] license [to] practice law in the Commonwealth of Virginia." (ECF No. 1-1, at 39.) Under Virginia law, courts cannot grant the relief he seeks; his injury is not redressable. Resolution of the issue requires a detailed look at Virginia's law governing attorney discipline.

Virginia has a statutory and regulatory procedure to discipline lawyers. Section 54.1-3909 of the Virginia Code empowers the Virginia Supreme Court to prescribe "procedures for disciplining, suspending, and disbarring attorneys." The Court has adopted comprehensive disciplinary rules, including procedures to suspend and disbar lawyers. Va. Sup. Ct. R. pt. 6, sec. IV, para. 13. Disciplinary cases begin when the Virginia State Bar, an agency of the Supreme Court of Virginia, receives a "complaint." *Id.* para. 13-1. After the Bar's staff "determines that the conduct questioned or alleged [presents] an issue under the Disciplinary Rules," it investigates the complaint, which proceeds through several preliminary reviews by Bar committees. *Id.* paras. 13-10 to 13-15.   If appropriate, the Bar eventually issues a "charge of misconduct," which

6

proceeds to a hearing. *Id.* para. 13-16. If the case involves possible suspension or revocation of the respondent's license to practice, the hearing occurs either before the Bar's Disciplinary Board or, at the option of the charged attorney, before a three-judge circuit court. *Id.* para. 13-18; Va. Code Ann. § 54.1-3935 (2017). If the charges are proved, the Bar or the three-judge court can suspend or revoke the respondent's license. *Id.*

Virginia law does not authorize disbarment proceedings in any way other than those outlined above. Ignoring both statutes and rules of court, Spanos argues that he can sue for Vick's disbarment under Va. Code § 54.1-3915. This section says that the Virginia Supreme Court may not adopt rules that diminish the power of Virginia's circuit courts to discipline attorneys. Spanos mistakenly contends that § 54.1-3915 allows him to have lawyers disbarred.

Section 54.1-3915, however, does nothing more than preserve the right of a circuit court to discipline attorneys for misconduct in that particular court. A circuit court may do so by banning the lawyer from practicing in that jurisdiction but not by disbarring the lawyer from practicing in the Commonwealth as a whole. A general disbarment–the relief sought by Spanos–can only occur through the procedures set forth in the Virginia Rules of Court.

The misadventures of Virginia attorney Jonathan Moseley demonstrate the error in Spanos's logic. Moseley misbehaved in Arlington Circuit Court. *See In re Moseley*, 273 Va. 688, 688, 643 S.E.2d 190, 190 (2007). After imposing sanctions of various sorts, the circuit court held a show cause proceeding to revoke Moseley's privilege to "practice before the Circuit Court of Arlington." *Id.* at 693–94, 643 S.E.2d at 193. The court then banned Moseley from further practice before the Court. *Id.* at 694, 643 S.E.2d at 193. Noting that the Arlington order only limited Moseley's privilege to practice in Arlington, the Virginia Supreme Court upheld the decision. *Id.* at 699, 643 S.E.2d at 196.

7

Moseley's Arlington case, however, did not resolve his licensure problems. The Virginia State Bar later commenced disciplinary proceedings pursuant to the Rules of Court, and a three-judge court suspended Moseley's license for six months. *Moseley v. Va. State Bar, ex rel. Seventh Dist. Comm.*, 280 Va. 1, 2, 694 S.E.2d 586, 589 (2010). The suspension covered the entire Commonwealth of Virginia, not just Arlington County. *Id.*

Critically, neither the Arlington case nor the disciplinary proceeding was filed by a litigant. Rather, the Arlington case commenced when the judge issued a rule to show cause, and the state-wide case was commenced by a Bar complaint. Neither of the *Moseley* cases followed the procedural path Spanos tries to tread. Under Virginia law, citizens only have the power to make a complaint to the Bar, which then prosecutes the matter.

Neither this Court nor the Henrico Circuit Court can grant the relief Spanos seeks. Since the Court cannot redress his injury, Spanos lacks standing.

When a case originates in federal court, the discovery that a plaintiff lacks standing requires dismissal. *Buscemi*, 964 F.3d at 261 (quoting *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013). The Fourth Circuit has not addressed whether a defendant's failure to establish Article III standing in a removed case–like the one here–instead requires remand to state court, but several other circuits have so concluded. *See e.g.*, *Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018); *Wallace v. Conagra Foods, Inc.*, 747 F.3d 1025 (8th Cir. 2014). Because Article III standing is a "subject matter jurisdiction issue," the Court concludes that § 1447(c) requires remand.

### ii. Federal Question and Diversity Jurisdiction

Even if the Court found that Spanos has standing to file his complaint, it would still lack subject matter jurisdiction over the case because Spanos's claims do not support either federal

8

question or diversity jurisdiction.

Pursuant to 28 U.S.C. § 1331, federal district courts have original jurisdiction over actions "arising under the Constitution, laws, or treaties of the United States." A case arises under federal law if a plaintiff's well-pleaded complaint establishes either (1) that federal law creates the cause of action or (2) that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27–28 (1983). Federal district courts also have jurisdiction over lawsuits between diverse parties when "the matter in controversy exceeds the sum or value of $75,000." *Id.* § 1332.

First, Spanos fails to allege a violation of "the Constitution, laws, or treaties of the United States," which could support federal jurisdiction under § 1331. Indeed, Spanos unequivocally states that he sues Vick for violating the VCPC.[7] Although Spanos refers multiple times to federal laws in his complaint, he now explicitly disavows any federal claims. Courts need not discern the unexpressed intent of pro se plaintiffs, and this Court declines to "conjure up and decide issues never fairly presented" before it. *Norman,* 2018 U.S. Dist. LEXIS 29818, at *4. Further, Spanos's "right to relief" does not depend on a "resolution of a substantial question of federal law." *Franchise Tax Bd.*, 463 U.S. at 27–28. Thus, the Court lacks federal question jurisdiction over Spanos's complaint. As for diversity jurisdiction, although Spanos pleads facts that allow the Court to conclude that he is diverse from Vick, there is no "amount in controversy" in this case. (*See* ECF No. 9, at 4.) The Court, therefore, also lack diversity jurisdiction over this case. Spanos does not allege facts that support either federal question or diversity jurisdiction. The Court, therefore, must remand the case. *See* 28 U.S.C. § 1447(c).

_____

[7] *See supra* Section I.

9

### D. Supplemental Jurisdiction[8]

Vick argues, however, that the Court should dismiss Spanos's ethics claims by exercising its supplemental jurisdiction. Even if the Court found that Spanos has standing to pursue his claims and that the Court has jurisdiction over the case, the Court would decline to exercise supplemental jurisdiction.

"The doctrine of supplemental jurisdiction indicates that federal courts generally have discretion to retain *or* dismiss state law claims when the federal basis for an action drops away." *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995) (emphasis in original). A court declining to exercise supplemental jurisdiction has "inherent power to dismiss the case *or, in cases removed from State court*, to remand, provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met." *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001) (emphasis added). Pursuant to § 1367(c), a district court may decline to exercise supplemental jurisdiction over a claim if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

"Although a federal court has discretion to assert [supplemental] jurisdiction over state claims even when no federal claims remain, '. . . if the federal claims are dismissed before trial . . . . the state claims should be dismissed' without prejudice." *Alexandria Resident Counsel, Inc., v. Alexandria Redev. & Hous. Auth.*, 11 F. App'x 283, 287 (2001) (internal citations and alteration

---

[8] "With 28 U.S.C. § 1367, Congress largely codified the doctrine of pendent jurisdiction . . . as supplemental jurisdiction." *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 394 (4th Cir. 2012).

omitted) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966)).  This is so because "[w]hen  all federal claims are  dismissed  early  in  the  litigation,  the  justifications  behind [supplemental] jurisdiction—considerations of judicial economy, convenience and fairness to litigants'—are typically absent." *Id.* (quoting *Gibbs,* 383 U.S. at 726.)

Application of the § 1367(c) factors to Spanos's case supports remand.  Spanos has disavowed the federal claims mentioned in his complaint, and only a state law claim remains.  This case remains in the early stages of litigation.  *Cf. Connelly v. Gen. Med. Corp.*, 880 F. Supp. 1100, 1118 (E.D. Va. 1995) (finding exercise of supplemental jurisdiction appropriate after dismissal of federal claims during "the later stages" of the case).  Accordingly, even if the Court could exercise supplemental jurisdiction over Spanos's complaint, it would not.

### IV.  **CONCLUSION**

For the foregoing reasons, Spanos lacks standing to sue for Vick's disbarment, and the Court has neither federal question nor diversity jurisdiction over his case.  Further, even if it could assert supplemental jurisdiction, the Court would decline to do so.  Accordingly, the Court will remand this case to the Henrico County Circuit Court pursuant to 28 U.S.C. § 1447(c).

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to the pro se plaintiff and all counsel of record.

Date: <u>20 December 2021</u>
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge

11